197 F.3d 1165 (D.C. Cir. 1999)
 Canadian Pacific Railway Company and Delaware and Hudson Railway Company, Inc.,Petitioners
v.
Surface Transportation Board and United States of America, Respondents
American Train Dispatchers Department of the International Brotherhood of Locomotive Engineers, Intervenor
 No. 98-1600
 United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued November 10, 1999
Decided December 10, 1999
 
 On Petition for Review of an Order of the Surface Transportation Board
 Krista L. Edwards argued the cause for petitioners. With her on the briefs were Terence M. Hynes and Mark E. Martin.
 Henri F. Rush, General Counsel, Surface Transportation Board, argued the cause for respondents. With him on the brief were Ellen D. Hanson, Deputy General Counsel, and Marilyn R. Levitt, Attorney. John J. Powers, III, John P. Fonte, and Robert J. Wiggers, Attorneys, U.S. Department of Justice, entered appearances.
 Michael S. Wolly and Robert E. Paul were on the brief for intervenor.
 Before: Edwards, Chief Judge, Silberman and Henderson, Circuit Judges.
 Opinion for the Court filed by Circuit Judge Silberman
 Concurring opinion filed by Circuit Judge Henderson.
 Silberman, Circuit Judge:
 
 
 1
 Canadian Pacific Railway Company petitions for review of an order of the Surface Transportation Board (the Board or STB) barring it from transferring train dispatchers from Milwaukee to Montreal. We grant the petition.
 
 I.
 
 2
 Canadian Pacific obtained permission from the Interstate Commerce Commission (ICC), the predecessor to the Board, to acquire the assets of the bankrupt Delaware and Hudson Railway Company. The ICC's approval carried several conditions, including the so-called "New York Dock" employee protective conditions, which require railroads to reach an implementing agreement with employees, using arbitration if necessary, before carrying out an operating change that may result in the dismissal or transfer of employees. See New York Dock Ry.-Control-Brooklyn E. Dist. Term., 360 I.C.C. 60 (1979).
 
 
 3
 As part of its plan to integrate the operations of Canadian Pacific and Delaware and Hudson, the railroad decided to move its train dispatching functions from Milwaukee to Montreal. Negotiations with the American Train Dispatchers Department of the International Brotherhood of Locomotive Engineers, the union that represents the dispatchers, failed to produce an agreement. The union invoked the New York Dock arbitration procedures, arguing that the proposed relocation was not within the scope of the transaction approved by the ICC. The arbitrator rejected that argument because the ICC's decision had clearly acknowledged that Delaware and Hudson would be "fully integrated into the CP Rail system, both operationally and functionally." The arbitrator therefore imposed an implementing agreement on terms suggested by the railroad.
 
 
 4
 The union petitioned the STB to set aside the arbitrator's decision. It argued that the arbitrator lacked jurisdiction to impose an implementing agreement because the relocation of dispatchers was not encompassed within the approved transaction. It also pointed out that moving dispatchers to Canada would place them outside the regulatory reach of the Federal Railroad Administration (FRA), which is responsible for railroad safety. The union included a letter from Edward English, Director of the FRA's Office of Safety Assurance and Compliance, to a Canadian Pacific executive. The letter noted that while there were "no existing laws or regulations directly preventing CP from relocating [dispatcher] positions to Canada," the FRA was nevertheless concerned because American limits on hours of service could not be enforced extraterritorially, nor could Canadian employees be subjected to random drug testing. It asked the railroad to postpone the transfer "until the issues regarding compliance with applicable U.S. safety regulations are resolved."
 
 
 5
 The Board denied the union's petition for review. It pointed out that review of arbitral decisions is very limited, under the standards of Chicago & N. W. Transp. Co. Abandonment, 3 I.C.C. 2d 729 (1987) (Lace Curtain), and it determined that the union had failed to demonstrate that the arbitrator exceeded his authority. It also rejected the union's argument about safety, noting that "the petitioners' safety concerns do not furnish a legal basis for reviewing the arbitrator's decisions." The union filed a petition for review before us, and it asked the STB to stay its order pending appeal. The Board refused, believing that the likelihood of success on the merits was small. (The union later moved for a voluntary dismissal with prejudice of its petition for review, No. 98-1476.)
 
 
 6
 Three days before the transfer of the dispatcher positions was to take place, the union again asked the STB to reconsider its decision. This time, the union suggested that in making its earlier decision, the Board "did not have the benefit of the FRA's considered judgment on these safety matters." It attached copies of letters from Edward English to the president of the union and to a Canadian Pacific executive, as well as a letter from FRA Administrator Jolene Molitoris to the CEO of Canadian Pacific. The letters indicated that the FRA had "mounting concerns" about the safety implications of moving dispatchers to Canada based on the same maximum hours and drug testing issues mentioned in the first letter. Also mentioned was the possibility that American law enforcement agencies might not be able to protect a Canadian dispatching facility from terrorist attack.English and Molitoris stated that these concerns led the FRA to consider "initiat[ing] a rulemaking to require trains operating in the U.S. to be dispatched from U.S. soil." Since the letters were not addressed to the STB, they did not ask the STB to take any action, but they did include a "request" that Canadian Pacific postpone the transfer of the dispatcher positions.
 
 
 7
 The STB the next day--out of the blue--issued a three paragraph order that stated in relevant part:
 
 
 8
 The Board now has in the record for the first time a definitive statement from the FRA that these positions should not be moved. Given this statement by FRA that the transfer of these positions could adversely affect rail safety, we will not allow their transfer to go forward under the authority of our labor conditions. There fore, the carriers are hereby ordered to refrain from consummating their transaction by effecting these transfers until we have been advised that the safety concerns of FRA have been satisfied.
 
 Canadian Pacific petitioned for review.[1]
 II.
 
 9
 The STB, the successor to the old ICC, is now part of the Department of Transportation, but in its adjudicatory function it is bound by the same limitations of the APA as any regulatory agency--independent or not. Typically, if its decisions are challenged in our court, the Department of Justice will appear on the brief along with the STB's office of general counsel. In this case the Department of Justice declined to appear; the STB was represented only by its general counsel. This is worth noting because the STB's action has quite taken us aback. Every once in a while we get a case which makes us aware of just how important is judicial review of agency action.
 
 
 10
 Although petitioner's brief was admirably restrained, we get the impression that counsel hardly knew where to begin in challenging the STB's letter order. Most obviously, perhaps, the order is an unexplained departure from the STB's formal decision. The Board's general counsel sought to defend the Board's volte face as resting on newly received "evidence." The supposedly new evidence was the FRA's "mounting concern" about the safety implications of moving the dispatchers to Canada (we can only imagine why the concern was mounting). Although the union continued to assert its objections and added the possibility of terrorist threats in no sense can the FRA's letter be thought evidence directed to any disputed fact. Nor can the order fairly be read as embodying a factual determination by the Board.
 
 
 11
 Even had new evidence been offered we do not see how the Board could have overturned or modified the arbitrator's award. The purpose of STB review of New York Dock arbitration awards is simply to ensure the proper functioning of the labor protective conditions. Under Lace Curtain, review is therefore limited to "recurring or otherwise significant issues of general importance regarding the interpretation of [the] labor protective conditions." Lace Curtain, 3 I.C.C. 2d at 736. As the Board held it is not apparent how it could be demonstrated that the arbitrator exceeded his authority nor how the union's "safety" concerns are relevant. Yet the Board stated that "we will not allow [the] transfer to go forward under the authority of our labor conditions" (emphasis added). As such the Board's statement seems a non sequitur.
 
 
 12
 The Board before us relies on a number of statutory provisions (and a non-statutory doctrine) that it contends gave it authority to issue the order. It invokes 49 U.S.C. 10101(8), which in setting out the underlying policy objectives that the Board is charged with furthering makes a reference to "the public health and safety." It mentions 49 U.S.C. 721(b)(4), giving the Board authority to "to issue an appropriate order" when doing so is "necessary to prevent irreparable harm," and 49 U.S.C. 11327, which allows the issuance of supplemental orders in railroad consolidation cases. And it cites the Permian Basin Area Rate Cases, 390 U.S. 747 (1968), for the proposition that an agency has inherent authority to issue orders necessary to achieve its ultimate purposes. We do not see how any of these authorities particularly helps the Board, but we need not expend much effort in considering them since they reflect only counsel's post hoc rationale.
 
 
 13
 Essentially the Board, a self-contained adjudicatory body, simply deferred to the inclinations of the executive department of which it is a part--and did so giving petitioners no notice or opportunity to contest that delegation. Such an approach is at war with fundamental doctrines of administrative law that have guided and restrained actions of administrative agencies for decades. It is moreover directly contrary to the statute that created the STB. Unlike the FRA, which is subject to the control of the Secretary of Transportation, see 49 U.S.C. 103, the STB is (or is supposed to be) an independent body. See 49 U.S.C. 701, 703(c) ("In the performance of their functions, the members, employees, and other personnel of the Board shall not be responsible to or subject to the supervision or direction of any officer, employee, or agent of any other part of the Department of Transportation."). The Board subverts the very reason for its existence when it makes the exercise of its regulatory powers contingent upon the will of the Executive Branch. Its order must be set aside.
 
 
 14
 * * * *
 
 
 15
 The petition for review is granted, and the order of the Surface Transportation Board is vacated.
 
 
 16
 So ordered.
 
 
 
 Notes:
 
 
 [1]
 At oral argument, counsel for the railroad informed us that the dispatcher positions have since been transferred to Minneapolis pursuant to an agreement with the union. Because Canadian Pacific still wishes to move the dispatchers to Montreal, and because the STB's order still bars it from doing so, the move has no effect on this case.
 
 
 
 17
 Karen LeCraft Henderson, Circuit Judge, concurring in the judgment:
 
 
 18
 I concur in the decision to grant the petition for review because the Surface Transportation Board failed to justify its change of course; we have no business, however, speculating on the inner workings or interrelationships of the Executive Branch.